UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE F. OLIVARES

        Plaintiff,

Case No. 21-11133

HON. MARK A. GOLDSMITH

vs.

C.R. ENGLAND, INC., et al.,

        Defendants.

_____/

**<u>OPINION & ORDER
(1) OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 24), (2) ACCEPTING THE RECOMMENDATION CONTAINED IN THE REPORT AND RECOMMENDATION (Dkt. 23), AND (3) GRANTING DEFENDANT'S MOTION TO CHANGE VENUE (Dkt. 6)</u>**

This matter is before the Court on the Report and Recommendation (R&R) of Magistrate Judge Elizabeth Stafford (Dkt. 23). In the R&R, the magistrate judge recommends that the Court grant Defendant C.R. England, Inc.'s motion to change venue (Dkt. 6). Plaintiff Jose Olivares filed a reply brief objecting to the R&R (Dkt. 24). For the reasons that follow, the Court overrules Olivares's objections, adopts the recommendation contained in the magistrate judge's R&R, and grants C.R. England's motion.[1]

---

[1] Oral argument will not aid the Court's decisional process, and so these motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). The briefing includes Olivares's response to C.R. England's motion (Dkt. 11), C.R. England's reply (Dkt. 7), a second response filed by Olivares identical to his first response (Dkt. 9), C.R. England's response to Olivares's objections (Dkt. 25), and Olivares's "rebuttal" to that response (Dkt. 26). C.R. England's brief in support of its motion is paginated separately from its motion but contained in the same filing.

## I. BACKGROUND

Olivares brought suit against C.R. England and Performance Contracting Group, Inc. (PCG) for wrongful termination and damages based on the Michigan's Worker's Disability Compensation Act of 1969, Mich. Comp. L. § 418 et seq. Notice of Removal at PageID.12–13 (Dkt. 1).[2] C.R. England submits that it employed Olivares as a truck driver and that the two parties entered into an employment agreement. Br. in Supp. Mot. at 2 (citing Agreement (Dkt. 6-2)) (containing "Mutual Arbitration Agreement" and "Agreement That All Court Proceedings Between the Parties Shall Take Place in Salt Lake City, Utah," each signed by both Olivares and C.R. England's Vice President of Human Resources in March 2021).

Olivares appears to dispute that he had a valid employment contract with C.R. England. See Obj. at 1, 3. However, the allegations in Olivares's complaint suggest that he had an employment relationship with C.R. England, which ultimately "terminated" him. Notice of Removal at PageID.16.[3]

PCG's role in this action is unclear.[4] Olivares alleges in his complaint that PCG "owes Plaintiff 250 weeks of reasonable employments to which any other Employer may provide and

---

[2] Olivares's complaint is contained in the same filing as C.R. England's notice of removal.

[3] Olivares asserts in his complaint that he "accepted an offer to be trained, in order to return to regular employments, as a commercial truck driver, by CR England." Notice of Removal at PageID.16. Olivares alleges that he began his training with C.R. England in March 2001. Id. Olivares submits that, while under agreement with C.R. England, he drove vehicles including trucks, tractors, and trailers at locations including Atlanta, Georgia and Marion, Indiana. Id. at PageID.14–18. He states that he suffered at least two workplace injuries or aggravations of pre-existing injuries. Id. Allegedly, Olivares reported these injuries to his C.R. England supervisor, who then terminated Olivares on April 14, 2021 in retaliation for his reports. Id. at PageID.14, 18.

[4] PCG is a company that specializes in the acquisition of contracting companies. See "Performance Contracting Group, Inc. (PCG)," https://www.performancecontracting.com/performance-contracting-group/ (last visited Feb. 18, 2022). Performance Contracting, Inc.—the largest division of PCG—is a specialty contractor that offers "quality services and products to the industrial, commercial and non-residential markets." See "Performance Contracting, Inc. (PCI),"

charge Performance Contracting Group for doing so," without further explanation. Id. at PageID.16. PCG may have provided Olivares with medical care. See id. at PageID.18–19 (alleging that "Charles Williams with Performance Contracting Group" had a role in "Plaintiff's actual diagnosis after surgery in 1999").

Olivares filed suit in Wayne County Circuit Court in Michigan, and C.R. England removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. Id. at PageID.2. C.R. England moves to transfer this action to the United States District Court for the District of Utah pursuant to 28 U.S.C. §1404(a). Br. in Supp. Mot. at 1–2. C.R. England argues that the forum selection clause in the employment agreement should govern:

> Excluding claims and disputes that must be arbitrated in accordance with an arbitration agreement entered into between the Parties, <u>any and all claims or disputes between the parties</u> arising from or related to individual's employment with Company or any pre-employment or post-employment interactions between the parties <u>shall be adjudicated exclusively in a Federal or State court located in Salt Lake City, Utah. Individual hereby consents to personal jurisdiction and venue in such courts.</u>

Agreement at PageID.49 (emphasis added). That agreement also stipulated that Utah law would govern any disputes. Id.

Magistrate Judge Stafford agreed with C.R. England that the forum selection clause should control in this case, and she recommended that C.R. England's motion to transfer be granted. R&R at 3–4. Olivares now objects to this recommendation. See Obj. at 5.

---

https://www.performancecontracting.com/about-pci/ (last visited Feb. 18, 2022).

## II. ANALYSIS[5]

Olivares raises four objections to Magistrate Judge Stafford's recommendation: two concerning the nature of the agreement cited by C.R. England, and two relating to the role of PCG. The Court considers these objections and overrules them, accepting the magistrate judge's recommendation that this action be transferred.

### A. Objections Relating to the Existence of an Employment Agreement

Magistrate Judge Stafford found that Olivares and C.R. England properly executed the agreement titled "Agreement that All Court Proceedings Between the Parties Shall Take Place in Salt Lake City, Utah." R&R at 2 (citing Agreement at PageID.49). Olivares argued that C.R. England had failed to provide a valid contract, arguing that the "agreement" was not a "contract" and that the Court should "look to the contract itself." Resp. to Mot. to Change Venue at PageID.85. The magistrate judge, however, found that the proffered agreement had been properly executed by Olivares and C.R. England and constituted an enforceable contract. R&R at 3. Because Olivares failed to show that this case was one of those "'most unusual cases'" in which the properly executed forum selection provision should not control, the magistrate judge recommended that this provision should govern. Id. at 2 (quoting Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 62 (2013)).

Olivares's first objection states in its entirety: "There is no employment agreement." Obj. at 1 (citing R&R). Olivares makes a similar argument in his third objection, stating: "Plaintiff signed no contract to which any agreement could be effectuated as a matter of law." Id. at 3. Olivares submits that "C.R. England does not have contracts as per it's [sic] own policy." Id. As to the "agreement" proffered by C.R. England as the employment agreement, Olivares argues that

---

[5] The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) (punctuation modified). Absent a specific objection, the issue is waived. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991). Additionally, any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

"none of the elements of a contract are in the agreement"—i.e., mutual assent, adequate consideration, capacity, and legality—and so "the agreement is not enforceable as a matter of law." Id. at 4.  Taking the position that there is no employment agreement, Olivares believes that case law concerning employment agreements is not applicable.  Id. at 3–4 (citing Umlaut Inc. v. P3 USA, Inc., No. 2:19-CV-13310, 2020 WL 4016098 (E.D. Mich. July 15, 2020) (finding that parties litigating tortious interference claim were bound by forum selection clause in agreement executed by parent companies regarding solicitation of each other's employees)).

Olivares also calls attention to a "boxed heading"—apparently in reference to the boxed text at the top of the Mutual Arbitration Agreement, see Agreement at PageID.43—and submits that this "heading states this is not an employment contract."  Obj. at 4.  The Court understands that Olivares is referring to the text that states: "C.R. England's Mutual Arbitration Agreement is voluntary and not a condition of employment."  Agreement at PageID.43.

The Court agrees with Magistrate Judge Stafford and C.R. England that Olivares is bound by the agreement he signed.  Olivares's contention that he had no employment agreement with C.R. England is perplexing, as Olivares bases his first claim in wrongful termination, which presumes the existence of an employment agreement.  See Notice of Removal at PageID.12.  Olivares tries to distinguish an "agreement" from a binding "contract."  Obj. at 3.  Whatever Olivares calls them, however, he signed both the mutual arbitration agreement and the forum selection clause.  See Agreement at PageID.47, 49.  The terms of the latter are broad, covering "any and all claims or disputes between the parties arising from or related to individual's employment with Company or any pre-employment or post-employment interactions between the parties."  Id. at 49.

"A forum selection clause should be upheld absent a strong showing that it should be set aside," and the party challenging the clause has the burden of showing that it should not be enforced.  Wong v. PartyGaming Ltd., 589 F.3d 821, 828 (6th Cir. 2009).  A federal court confronted with the enforceability of a forum selection clause in a diversity case considers (i) whether the clause was obtained by fraud, duress, or other unconscionable means; (ii) whether the

5

designated forum would "ineffectively or unfairly handle the suit"; and (iii) whether the designated forum is "so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." Id. Olivares makes no objections based on any of these factors and provides no cogent reason for invalidating an agreement executed by himself and his apparent employer. Olivares's rote iteration of the elements of a contract cannot absolve him from terms to which he agreed. See Aguirre v. United States, No. 2:06-CR-76, 2012 WL 3191958, at *7 (E.D. Tenn. Aug. 2, 2012) (denying claims based in "conclusory allegations without any factual allegations at all").

When there is a valid and enforceable forum selection clause—as is the case here—that clause governs except in the "rare[]" case that the plaintiff shows that public-interest factors favor non-enforcement. Lakeside Surfaces, Inc. v. Cambria Co., LLC, 16 F.4th 209, 215 (6th Cir. 2021).[6] Olivares does not raise any objections based in these factors, and so any such arguments are waived. Willis, 931 F.2d at 401. The Court, therefore, finds that the agreement selecting Salt Lake City, Utah as the venue for all employment-related disputes between the parties is controlling for the present action.

### B. Objections Relating to Role of PCG

Magistrate Judge Stafford made no mention of PCG in the R&R. Olivares asserts in his objections that PCG is a "mandatory party" and notes that the R&R's case caption does not include PCG as a party. Obj. at 1; R&R at 1. Olivares's objections also appear to engage in the merits of his claims against PCG.[7]

---

[6] The public-interest factors include: (i) administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies decided at home; (iii) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. Hefferan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 500 (6th Cir. 2016).

[7] Olivares alleges that "[i]n 1998 PGG, made sure that Plaintiff did not receive reasonable medical care by surgical intervention." Obj. at 2. Olivares states that, following a June 22, 1998 surgery (apparently relating to injuries suffered while under agreement with C.R. England), "PCG obtained Plaintiff's surgical video, and bone and ligament." Id. PCG subsequently "concealed Plaintiff's diagnosis of enthesisitis [sic] as a result of a fall to the back." Id.

As explained above, the forum selection clause governs, and so the merits of Olivares's claims will have to wait for Salt Lake City. Regarding Olivares's assertion that PCG is missing from this action, the blame appears to be Olivares's, as there is no indication that PCG was ever served. No counsel for PCG has appeared in the case. It appears likely that the state summons for PCG has expired and that PCG is dismissible, given that the summons issued to C.R. England on April 19, 2021 expired after 90 days. See Notice of Removal at PageID.10.

Regardless, Olivares's objections regarding PCG have no impact on the Court's determination that the forum selection clause governs this dispute.

### III. CONCLUSION

For the foregoing reasons, the Court overrules Olivares's objections (Dkt. 24), adopts the recommendation contained in the magistrate judge's R&R (Dkt. 23), and grants C.R. England's motion to transfer venue (Dkt. 6). The Clerk of the Court is directed to transfer this action to the United States District Court for the District of Utah.

SO ORDERED.

Dated: February 22, 2022  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 22, 2022.

s/Karri Sandusky  
Case Manager